24-1301-bk

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of March, two thousand twenty-five.

PRESENT:
> JOHN M. WALKER, JR.,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

_____

IN RE: DÉCOR HOLDINGS, INC.,

> *Post-Confirmation Debtor*.

_____

BRYAN RYNIKER,

> *Plaintiff-Appellant*,

v.                                                                                    24-1301-bk

UNITED PARCEL SERVICE INC.,

> *Defendant-Appellee.**

_____

* The Clerk of the Court is respectfully directed to amend the caption on this Court's docket to be consistent with the caption on this order.

FOR PLAINTIFF-APPELLANT:

SCHUYLER CARROLL, Manatt, Phelps & Phillips LLP, New York, New York, (Noah Weingarten, *on the brief*), Loeb & Loeb LLP, New York, New York.

FOR DEFENDANT-APPELLEE:

AILEEN M. MCGRATH (Theresa A. Foudy and Raff Ferraioli, *on the brief*), Morrison & Foerster LLP, San Francisco, California, New York, New York.

Appeal from an order of the United States District Court for the Eastern District of New York (Nina Gershon, *Judge*).

**UPON DUE CONSIDERATION**, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court, entered on April 23, 2024, is **AFFIRMED**.

Plaintiff-Appellant Bryan Ryniker, in his capacity as the Litigation Administrator of the post-confirmation estates of Post-Confirmation Debtor Décor Holdings, Inc. and its affiliated entities (collectively, "Debtors"), appeals from the district court's decision affirming the bankruptcy court's order granting summary judgment in favor of Defendant-Appellee United Parcel Service, Inc. ("UPS") and dismissing Debtors' claims for (1) avoidance of preference period transfers and fraudulent conveyances, (2) recovery of avoided transfers, and (3) disallowance of all claims, pursuant to 11 U.S.C. §§ 502, 547, 548, and 550. The sole issue on appeal is whether an executory contract between Debtors and UPS (the "Carrier Agreement")—under which UPS provided package pickup and delivery services to Debtors— was actually assumed and assigned to a third-party purchaser in a Chapter 11 bankruptcy proceeding. We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as necessary to explain our decision to affirm.

**BACKGROUND**

In February 2019, Debtors filed voluntary Chapter 11 petitions in the Bankruptcy Court for the Eastern District of New York. During the ninety days leading up to the filing of those petitions, Debtors paid UPS around $1.17 million for services UPS provided them under the Carrier Agreement. Debtors then defaulted under the Carrier Agreement.

In the bankruptcy proceeding, Debtors sought to sell substantially all of their assets to a potential purchaser, RADG Holdings, LLC (the "Purchaser"). In April 2019, Debtors entered into an asset purchase agreement (the "APA") with the Purchaser. Under the APA, the Purchaser agreed to assume certain of Debtors' liabilities, including paying "the Cure Costs for the Assigned Contracts and Assigned Leases." App'x at 225. The APA required that, "[a]t the Closing, the Sellers shall have cured any and all defaults or have provided adequate assurance that they will cure any and all defaults with respect to Assigned Leases and Assigned Contracts . . . so that at the Closing, there shall be no material defaults under any of the Assigned Leases and Assigned Contracts, it being understood that the Purchaser shall pay the Cure Costs." *Id.* at 230. In addition, Section 9.2 of the APA required Debtors to "deliver or cause to be delivered . . . all of the Ancillary Documents to be executed and delivered by it and any other document contemplated by this Agreement to be executed and delivered by Sellers." *Id.* at 239. The definition section of the APA defined "Ancillary Documents" as including the "Assignment and Assumption Agreements," which, in turn, encompassed any "document or instrument of transfer executed at the Closing in order to evidence the transfer any Purchased Assets to the Purchaser or to evidence Purchaser's assumption of any Assumed Liabilities." *Id.* at 214.

As part of the sale process, the bankruptcy court approved procedures for the assumption and assignment of executory contracts and unexpired leases (the "Procedures"). The Procedures required Debtors to file and serve a notice identifying the contracts they sought to assume and assign, and their proposed cure amount for each. The non-debtor counterparty to each contract could object to the proposed cure amount. The Procedures made clear, however, that "any Contract that is the subject of a Cure Cost/Assignment Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection." *Id.* at 692. After the sale of Debtors' assets, Debtors were required to serve a second notice identifying the successful purchaser and all contracts proposed to be assumed by the successful purchaser. Finally, the Procedures conditioned Debtors' assumption and assignment of executory contracts on the "approval by the Court" and "consummation of the Sale." *Id.* at 692.

In accordance with the Procedures, Debtors filed a notice proposing executory contracts to be assumed and the respective cure amounts. The Carrier Agreement was included in that notice, with a proposed cure amount of $0.00. The notice also included a reservation of rights: "The inclusion of any contract . . . does not . . . require or guarantee that such contract will be assumed and assigned, and all rights of the Debtors with respect thereto are reserved." *Id.* at 721 (emphasis omitted). UPS objected to the $0.00 proposed cure amount associated with the Carrier Agreement.

Shortly thereafter, Debtors filed a notice that the Purchaser had been designated as the successful bidder. Consistent with the Procedure, this notice listed executory contracts and unexpired leases that the Purchaser "designated for assumption by the Debtors and assignment

4

to the [Purchaser]." *Id.* at 119. Once again, the Carrier Agreement was designated for assumption and assignment. The cure amount was listed as "TBD," with an accompanying note explaining that the "[p]arties are working to resolve the Cure Amount, failing which Buyer reserves the right to remove." *Id.* at 126.

On May 3, 2019, Debtors filed a Third Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors (the "Plan"). Article 7.1 of the Plan provided that, "[s]ubject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of (i) the assumption of the leases and executory contracts listed on the Assumption Notice and (ii) the assignment of such leases and executory contracts to the Purchaser." *Id.* at 153. The Plan defined the "Effective Date" as the date "designated by the Debtors in a notice filed with the Bankruptcy Court" on which all conditions necessary for the Plan to take effect "ha[d] been satisfied or waived" and "no stay of the Confirmation Order [wa]s in effect." *Id.* at 136.

Three days later, the bankruptcy court entered an order confirming the Plan "in its entirety" and approving the sale of Debtors' assets ("Confirmation Order"). *Id.* at 178. The Confirmation Order stated that Debtors' executory contracts and unexpired leases would "be deemed rejected . . . unless any such unexpired leases or executory contracts are (i) specifically assumed pursuant to order(s) of the Bankruptcy Court prior to the Effective Date or under the Plan, [or] (ii) identified on" the annexed "Schedule of Assumed Contracts." *Id.* at 184 (emphasis omitted). The Schedule of Assumed Contracts designated the Carrier Agreement for assumption and assignment with a cure amount "TBD in an amount not to exceed $60,000.00." *Id.* at 288. Further, paragraph 45 of the Confirmation Order provided that:

The requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code are hereby deemed satisfied with respect to the Proposed Assigned Contracts listed on the annexed Schedule of Assumed Contracts (the "Assigned Contracts"), upon the Purchaser's satisfaction of the Cure Costs in connection with such Assigned Contracts. The Debtors are hereby authorized, in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code, to: (a) assume and assign and transfer, free and clear of all Interests, to the Purchaser the Assigned Contracts; and (b) execute and deliver to the Purchaser such assignment documents as may be necessary to confirm such assignment and transfer. The Purchaser will cure, and have provided adequate assurance of cure, of any default or breaches required to be cured under any of the Assigned Contracts, if any, within the meaning of section 365(b)(1)(A) and (B) of the Bankruptcy Code as of the Closing Date. The Purchaser has provided adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

*Id.* at 196 (emphasis in original). Similarly, paragraph 48 of the Confirmation Order stated that the "Cure Costs set forth in the Assumption Notice constitute all of the cure amounts that are required to be paid in order to assume and assign the Assigned Contracts." *Id.* at 198.

After the entry of the Confirmation Order, Debtors filed a notice indicating that the "Closing" of the Sale occurred on May 3, 2019, and that the "Effective Date" occurred on May 6, 2019. App'x at 821.

More than a year later, in August 2020, Ryniker, in his capacity as the Litigation Administrator for the post-confirmation estates of Debtors, filed the instant preference action against UPS seeking to avoid and recover payments they made to UPS under the Carrier Agreement during the ninety days prior to Debtors' filing for bankruptcy. UPS moved for summary judgment on the basis that payments made pursuant to an assumed contract cannot be avoided as preferential payments. Debtors do not dispute that assumption of the Carrier Agreement constitutes a total defense to their claims. The bankruptcy court granted summary judgment in favor of UPS, concluding that the Carrier Agreement had in fact been assumed.

6

The bankruptcy court also denied Debtors' motion for reconsideration. The district court affirmed both decisions. *See generally In re Décor Holdings, Inc.*, No. 22-cv-04621 (NG), 2024 WL 1740788 (E.D.N.Y. Apr. 23, 2024). This appeal followed.

**DISCUSSION**

"[T]he rulings of a district court acting as an appellate court in a bankruptcy case are subject to plenary review." *Belton v. GE Cap. Retail Bank*, 961 F.3d 612, 614 (2d Cir. 2020). "We review *de novo* a bankruptcy court's grant of summary judgment." *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 415 (2d Cir. 2022). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We agree with both the bankruptcy and district courts that the Carrier Agreement was assumed. Therefore, the bankruptcy court properly granted summary judgment in favor of UPS.

It is uncontroverted that, as part of Debtors' sale of substantially all of their assets to the Purchaser in the bankruptcy proceeding, Debtors and Purchaser expressly bargained to assume and assign the Carrier Agreement, and for Purchaser to pay the associated cure costs. Debtors filed a notice of proposed executory contracts to be assumed as part of the Sale, which included the Carrier Agreement. After the Purchaser was designated as the successful bidder, Debtors filed a second notice, which listed the Carrier Agreement among those executory contracts that the Purchaser "designated for assumption by the Debtors and assignment to the [Purchaser]." App'x at 119; *see id.* at 126. Finally, the bankruptcy court's Confirmation Order approving of the Sale listed the Carrier Agreement in the Schedule of Assumed Contracts. The bankruptcy court's Procedures conditioned valid assumption of executory contracts on two conditions

7

precedent: (1) "approval by the Court," and (2) "consummation of the Sale." App'x at 692. In turn, the Plan provided that (1) "the occurrence of the Effective Date" and (2) "entry of the Confirmation Order" constituted approval by the Court. App'x at 153. The Confirmation Order, which confirmed the Plan "in its entirety," was entered on May 6, 2019, and expressly "authorized" Debtors, "in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code, to [] assume and assign and transfer, free and clear of all Interests, to the Purchaser the Assigned Contracts." App'x at 162, 178, 196. It is also undisputed that the "Closing" of the Sale occurred on May 3, 2019, and that the "Effective Date" occurred on May 6, 2019. App'x at 821. In addition, on appeal, Debtors do not dispute that all statutory requirements of Section 365(b) of the Bankruptcy Code were met.[1] Therefore, because all conditions precedent and statutory requirements were met, the Carrier Agreement was in fact assumed by Debtors and assigned to the Purchaser as of the Effective Date.

Debtors' arguments to the contrary are unavailing. First, Debtors argue that the Confirmation Order only approved, rather than required or obligated, Debtors to assume the Carrier Agreement. We are unconvinced that this alters the legal analysis. Debtors and the Purchaser expressly negotiated for the Purchaser to assume the Carrier Agreement at the end of the transaction. Once the Sale closed, and all the conditions precedent were met, the Purchaser obtained what it bargained for—namely, certain of Debtors' assets and liabilities, which included

---

[1] In order to assume a defaulted contract in bankruptcy proceedings, Section 365(b) requires the debtor or assignee to "(1) cure the default, or provide adequate assurance that it will promptly cure it; (2) compensate, or provide adequate assurance that the trustee will promptly compensate, the non-debtor party to the contract for any actual monetary loss caused by the debtor's default; and (3) provide adequate assurance of future performance under the contract." *In re Wireless Data, Inc.*, 547 F.3d 484, 489 (2d Cir. 2008) (citing 11 U.S.C. § 365(b)(1)(A)–(C)).

the Carrier Agreement. None of the documents filed in the bankruptcy court dictates that parties to the APA needed to take any additional steps to fully consummate the Sale once all conditions precedent were met and Closing occurred.

Debtors contend that, as a practical matter, we should not conclude that assumption automatically occurred because, if Debtors assumed the Carrier Agreement before closing and then closing did not occur, Debtors would be left with an assumed contract they did not want. However, Debtors assumed no such risk here. The Plan conditioned effective assumption and assignment on "the occurrence of the Effective Date," which occurred *after* the closing date. App'x at 153; *see id.* at 821. After the Closing occurred, Purchaser no longer had the ability to renege on what it contracted to buy.

Relatedly, Debtors claim that UPS furnished no evidence that assumption and assignment actually occurred. In particular, Debtors note that UPS did not submit an executed assumption and assignment agreement or evidence of its negotiation of the cure amount with the Purchaser. These argument are unpersuasive. Debtors point out that Section 9.2 of the APA requires Debtors to deliver "Ancillary Documents" at closing, which include "Assignment and Assumption Agreements," defined as the "Bill of Sale, Assignment and Assumption Agreement . . . and any other document or instrument of transfer executed at the Closing in order to evidence the transfer [of] any Purchased Assets to the Purchaser." App'x at 214. However, Section 9.2's obligation is merely to "deliver" any such agreements. App'x at 240. There is no separate provision in the APA or elsewhere mandating that parties "shall" or "must" execute such agreements as a necessary condition to properly effectuate the assumption and assignment of the executory contracts.

9

Debtors' contention that the absence of any evidence that the Purchaser and UPS negotiated the cure amount after closing suggests that assumption never occurred is equally without merit. Whether the Purchaser and UPS subsequently finalized the cure amount is irrelevant to whether the Carrier Agreement was in fact assumed. As the Procedures made abundantly clear, "any Contract that is the subject of a Cure Cost/Assignment Objection with respect solely to the amount of the Cure Cost may be assumed and assigned *prior* to resolution of such objection." App'x at 692 (emphasis added). In short, a plain reading of the Confirmation Order, the Plan, the APA, and the Procedures makes clear that the inexorable consequence that flowed from those legal documents was the actual assumption of the Carrier Agreement. Debtors cannot manufacture a material dispute of fact by pointing to an absence of other evidence supporting what occurred as a matter of law.

Next, Debtors renew the argument raised before the bankruptcy and district courts that certain ambiguous language in the Confirmation Order should be interpreted in their favor. Specifically, they contend that, under the Confirmation Order, the Purchaser's payment of the cure amount was a condition precedent to assumption. In support of this argument, Debtors principally rely on paragraph 45 of the Confirmation Order, which states, in relevant part, "[t]he requirements of section[] 365(b)(1) . . . are hereby deemed satisfied . . . upon the Purchaser's satisfaction of the Cure Costs in connection with such Assigned Contracts." App'x at 196. Again, we disagree. To be sure, as both the district and bankruptcy courts acknowledged, certain language in paragraph 45 of the Confirmation Order arguably supports Debtors' interpretation. *See In re Décor Holdings, Inc.*, 2024 WL 1740788, at *3; App'x at 895. However, we have said that a bankruptcy court's interpretation of its own order "warrants

10

customary appellate deference" because it "[i]s in the best position to interpret its own orders."

*In re Casse*, 198 F.3d 327, 333 (2d Cir. 1999) (internal quotation marks and citation omitted).[2]

Debtors' argument required the bankruptcy court to clarify the intended meaning of ambiguous words in an order it entered.  We therefore will not disturb the bankruptcy court's interpretation of its order absent a clear abuse of discretion.  *See In re Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 678 (2d Cir. 2003).

Here, the bankruptcy court disagreed with Debtors' interpretation of the court's own Confirmation Order, explaining that "the meaning of [paragraph 45 of the Confirmation Order], taken as a whole, is that the satisfaction of the requirement to make the cure payment is in fact the order for the purchaser to pay.  The failure of that purchaser to pay leaves the adverse party the right to sue the purchaser and get the money."  App'x at 894.  It concluded that "the parties basically agreed that the direction of the Court requiring the purchaser to make the payment satisfied the cure, as required by [Section] 365."  *Id.* at 895.  The bankruptcy court's interpretation is buttressed by the fact that nothing in the record indicates that any party sought

---

[2]  In their reply brief, Debtors argued for the first time that we should not defer to the bankruptcy court's interpretation of its own order because "[t]he bankruptcy court did not draft" the order at issue.  Reply Br. at 5 (quoting *Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortg. Corp. (In re Blackwood Assocs., L.P.)*, 153 F.3d 61, 66 (2d Cir. 1998)).  The district court expressly deferred to the bankruptcy court's interpretation of the Confirmation Order.  *See In re Décor Holdings, Inc.*, 2024 WL 1740788, at *3. Debtors' failure to challenge that explicit exercise of deference in their opening brief constitutes waiver. *See McCarthy v. S.E.C.*, 406 F.3d 179, 186 (2d Cir. 2005).  In any event, we are unpersuaded that we should withhold deference merely because the bankruptcy court was not the drafter of the Confirmation Order.  The Confirmation Order here is a quintessential court order in that it is the ultimate exercise of the bankruptcy court's legal authority in a Chapter 11 proceeding, and is predicated on its own "findings of fact and conclusions of law."  App'x at 165.  In other words, the bankruptcy court would only enter the Confirmation Order after it concluded that the legal and factual requirements for the Plan to go forward were all satisfied.  Therefore, in the specific context of the Chapter 11 proceeding, the bankruptcy court was very much "uniquely situated to understand the intended meaning" of its own Confirmation Order.  *In re Blackwood Associates, L.P.*, 153 F.3d at 66.

to modify the Plan to require the Purchaser to pay the cure amounts prior to assumption. Indeed, the Confirmation Order expressly adopted the Plan "in its entirety." *Id.* at 178. Moreover, both the APA and Section 365(b)(1)(A) give Debtors the option to either cure or provide adequate assurance that they will cure any defaults with respect to assumed contracts. *See id.* at 230; 11 U.S.C. § 365(b)(1)(A). It would be exceedingly odd for the bankruptcy court to *sua sponte* eliminate Debtors' option, under both the bargained-for contract and statute, to provide adequate assurance of cure as a condition of assumption. In sum, we conclude that the bankruptcy court did not abuse its discretion in interpreting the Confirmation Order to have approved assumption of the Carrier Agreement without requiring the Purchaser to make the cure payment upfront.

Finally, Debtors argue that, even if providing adequate assurance was sufficient, it was not satisfied because the Confirmation Order contemplated that the Purchaser would take further actions. Specifically, Debtors again rely on paragraph 45 of the Confirmation Order, which states that "[t]he Purchaser will cure, and have provided adequate assurance of cure, of any default or breaches required to be cured under any of the Assigned Contracts, if any, within the meaning of section 365(b)(1)(A) and (B) of the Bankruptcy Code as of the Closing Date." App'x at 196. We are unpersuaded. As the bankruptcy court made clear, this directive that the Purchaser shall pay the cure payments in the future constituted the sufficient cure or adequate assurance of cure to satisfy Section 365(b)(1)(A). *See id.* at 894 (concluding that "the satisfaction of the requirement . . . is in fact the order for the purchaser to pay,"). In other words, the language in paragraph 45 confirmed that "another party became obligated to make the payment" in the future, and that therefore the "assumption and assignment was cured," vis-à-vis Debtors, under Section 365(b)(1)(A). *Id.* Thus, while the language gives "the adverse party

12

the right to sue the purchaser and get the money," it does not make assumption "contingent" on the Purchaser's future payment. *Id.* We discern no abuse of discretion in the bankruptcy court's interpretation.

Therefore, based on the plain language of the Confirmation Order, the Plan, the APA, and the Procedures, we conclude that Debtors failed to raise a genuine dispute as to whether the assumption of the Carrier Agreement actually occurred. Because the parties agree that assumption of the Carrier Agreement is a complete defense to Debtors' preference action, summary judgment in favor of UPS was properly granted.

\* \* \*

We have considered Debtors' remaining arguments and find them to be without merit. Accordingly, the order of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13